MENGAL BOX COMPANY *v.* MOORE & M'FERRIN *et al.* *

(*Jackson.* April Term, 1905.)

1. **TIMBER.** Contract of permission to cut and remove timber for five years, but no longer, confers no right thereafter to remove logs previously cut.

   Contract of permission to enter upon certain described lands and to cut and remove therefrom all the cottonwood trees standing or lying thereon for a period of five years, with right of ingress and egress for said period, but after which there shall be no right nor timber cut on said lands, confers right and title to such trees, timber, or logs only as have been cut and actually removed from the land before or by the expiration of the five-year limit, and confers no title to, or right thereafter to remove, any trees or logs previously felled and cut. (*Post, pp.* 598-608.)

   Cases cited and approved: Hodges v. Buell (Mich.), 95 N. W., 1078; Utley v. Lumber Co., 59 Mich., 263; Richards v. Tozer, 27 Mich., 451; Wait v. Baldwin, 60 Mich., 626; Burch v. Lumber Co. (N. C.), 46 S..E., 24; Hoit v. Mills, 54 N. H., 109, 121; Strasson v. Montgomery, 32 Wis., 52; Golden v. Glock, 57 Wis., 118; Saltonstall v. Little, 90 Pa., 422.

   Case cited and distinguished: Carson v. Lumber Co., 108 Tenn., 681.

   Cases cited and disapproved: Kingsley v. Holbrook, 45 N. H., 313; Macomber Case, 108 Mich., 491.

2. **SAME.** Same. Conveyance of land subject to timber contract subsitutes grantee to rights of grantor, including timber cut, but not removed within time limit, when.

   A deed of conveyance of lands, subject to an existing contract of permission to cut and remove trees thereon at any time within a certain period of five years, passes to the grantee not only the lands and the growing trees thereon, but substitutes him

---

*As to conveyance of title to standing timber without conveying title to land, see note to McRae v. Stillwell (Ga.),55 L. R. A.,513.

Box Co. v. Moore.

to all the rights which the grantor had in the lands, subject to
such timber contract, including the right to the timber felled
and cut thereunder previous to the execution of such deed, but
not removed from the land within the five-year limit. (*Post*,
*p.* 608.)

3.  **SAME. Same. Same.** Purchaser of land subject to timber
contract may recover logs removed after time limit, though
cut before his purchase, if confused with logs cut thereafter.

Where a party, under a contract of permission to cut and remove
trees from land within a period of five years, cuts trees both be-
fore and after a conveyance of the land subject to his contract,
and fails to remove them within the limited period of five years,
but removes them afterwards, and mingles and confuses them,
the grantee in the deed of conveyance may recover all of them
under the doctrine of mixing and confusion. (*Post, p.* 608.)

FROM LAUDERDALE.

Appeal from the Chancery Court of Lauderdale Coun-
ty.—JOHN S. COOPER, Chancellor.

DRAPER & RICE and RANDOLPH & RANDOLPH, for com-
plainant.

MYERS, BANKS & APPERSON, for defendants.

MR. JUSTICE WILKES delivered the opinion of the
Court.

This is an action of replevin for a number of saw logs.
The chancellor decided in favor of the complainant; and
the defendants have appealed.

The facts, so far as necessary to be stated, are that on the 3d of October, 1898, J. C. Marley made a contract with J. H. Evans concerning the cottonwood timber on a tract of 2,358 acres of land in Lauderdale county. This contract, by a regular chain of conveyances or transfers finally vested in the defendants Moore & McFerrin. In March, 1903, before the expiration of the contract made by Marley with Evans, the Mengal Box Company bought of Marley the whole of the land from which the timber was to be cut. All of the contracts were regularly registered, and the deed from Marley to the Mengal Box Company recited the contract made by Marley with Evans, and the conveyance to the box company was made subject to that contract.

The contract had a five-year limit for cutting and removing the timber, and, about six months after the expiration of this limit, Moore & McFerrin were proceeding to remove certain cottonwood logs from the premises, when they were replevied by the Mengal Box Company. The replevin suit was brought in April, 1904, and resulted as before stated.

The contract between Marley and Evans is in these words:

"For and in consideration of the sum of $2,538.00, on the following payments, to wit: I, Jo. C. Marley, have given and granted, and by these presents do give and grant unto the said J. H. Evans, permission to enter upon and cut and fell any and all cottonwood trees now standing and growing upon the following described

tract of land, situate in the county of Lauderdale and the State of Tennessee, with the privilege of cutting and removing said cottonwood timber for the term of five years from this date, with this exception: That the said Evans is to release all claim on as much as two hundred acres each year, so that the same may be leased or cleared. The title of all the other kinds of timber is retained by me. The said Evans is to have the right of ingress and egress on said land for his said term, after which time he is to have no right or cut any timber on said land. Said Evans is to have and own all cottonwood timber, both standing and now down, that he may cut and remove within said five years from said land. And I warrant the title of said timber, and I will not give any other person a right to cut or remove any cottonwood timber from said land during said five years.

"Witness my hand, this 3d day of October, 1898, Jo. C. Marley."

The deed from Marley to the Mengal Box Company contains the following recital and reservation:

"But it is understood that I sell to the said Mengal Box Company the second described tract of land subject to the contract which I have heretofore made with J. H. Evans, for the sale to him of all cottonwood timber on said tract of land, giving him five years from the third day of October, 1898 in which to remove the same, which contract is registered in the register's office at Ripley, Tennessee, in Book J. J. pages 10 and 11, it being en-

cumbered only by the said Evans right to remove said timber."

There was a covenant in the deed of seisin and right to convey, and against incumbrances, except by the timber contract with Evans, as above set out, and some taxes which the box company agreed to pay.

It appears that before the time limit had expired, of five years from the date of the contract, Moore & McFerrin had cut or caused to be cut into saw logs all or virtually all the saw logs replevied in this suit, and there are several hundred more saw logs cut and ready to be removed from the land.

The logs, when replevied, were not on the land, but had been removed therefrom by Moore & McFerrin, and were rafted in Coal creek, ready to be floated, when a rise should come, to market.

The only question of importance in the case is the proper construction and effect to be given to the contract entered into between Marley and Evans.

Moore & McFerrin claim that under this contract the title to all the cottonwood logs which were cut before the expiration of the time limit of five years, beginning October 3, 1898, vested in them; and, inasmuch as the trees were felled and cut into saw logs before the expiration of their five year limit, they had a right to remove the logs after the expiration of that time.

Quite a number of cases are cited on both sides bearing upon the question of the rights of the parties under con-

tracts made for the cutting and removing of standing trees.

We are of opinion that the language of the contract in this case admits of but one construction, and we need not consider the nice distinctions which have been made in the cases, bearing upon the question of such contracts.

We think the contract means that Evans should become the owner and have the title to all the logs which should be cut and removed before or by the expiration of the five-year limit; but, in order to give him the ownership and to entitle him to such logs, they must not only be cut (that is, the trees felled and the logs cut into lengths), but the logs must be removed from the premises before or by the expiration of the five-year limit; and, after the expiration of that time, Evans would have no right to either fell any trees, cut any logs, or remove them after being cut, or to remove any logs that have been previously cut.

The contract gives Evans permission to enter upon the lands, and to cut and fell all cottonwood trees standing and growing upon them, with the privilege of cutting and removing the timber, for the term of five years, with the exception that Evans was to release all claim on as much as two hundred acres each year, so that the same might be leased and cleared. "The title to all other kinds of timber is retained by me." This means that all timber, except such cottonwood trees as had been cut and removed from the premises within the time limit, should remain in Marley.

The contract further says: "The said Evans is to have the right of ingress and egress on said land for his said term, after which time he is to have no right or cut any timber on said land."

This means that he should have no right of ingress and egress to the land for any purpose after the expiration of the five-year limit, nor should he cut any timber on the land after that time.

In further confirmation on this construction, the contract provides as follows: "Said Evans is to have and own all cottonwood timber, both standing and now down, that he may cut and remove within said five years from said land."

This means that he should obtain no title to any of the cottonwood timber unless it was both cut and removed within the five-year limit.

The contract further says: "And I warrant the title of said timber, and I will not give any other person a right to cut or remove any cottonwood timber from said land during said five years."

The expression, "And I warrant the title of such timber," refers to such timber as Evans might cut and remove within the five years, and only extends to such timber; the said Evans having no interest in any other.

This, we think, is the plain meaning of the contract, and its language admits of no other interpretation.

While the authorities are somewhat conflicting as to the rights of the vendor and vendee in cases of contracts for the cutting and removal of timber growing upon

lands, we think there are no cases in which the language is the same as the language in this contract, or similar thereto, where it has been construed differently from the meaning which we attach to this contract.

The seeming conflict between many of the cases arises out of the difference in the terms and language of the contract, and the words used in expressing the same.

In our own State we have no direct authority upon the exact question involved.

In the case of *Carson* v. *Lumber Co.,* 108 Tenn., 681, 69 S. W., 320, it was held that under a contract for the sale of standing trees, which contained no provision for the cutting and removing the same, the grantee has the right, implied by law, to enter upon the lands and cut and remove the same within a reasonable time, but not after the lapse of such reasonable time; and, under the peculiar facts of that case, the court was of opinion that a period of ten years from the date of the contract was a reasonable time for cutting and removing the timber under the contract.

That case is to be differentiated from this, in that there was a sale of all the standing trees, which vested the absolute title to the same, and no time limit was fixed, within which to cut and remove the timber; but here a mere permission was given to go upon the land and cut and remove the timber, and this cutting and removal must, by the contract, be made within five years from the date of the same, and the title to the timber

did not pass until it was cut and removed, under the express language of the contract itself.

The general rule of law applicable in such cases is thus laid down in the twenty-eighth volume of the American & English Encyclopedia of Law (2d Ed.), 541:

"Contracts for the sale of standing trees, to be removed within a specified time, have generally been construed by the court as sales of only so many trees as the vendee might cut and remove within the time designated; the balance remaining the property of the vendor."

To sustain the text are cited cases from Georgia, Maine, Massachusetts, Michigan, Minnesota, and New York. The text adds:

"Such a sale may, however, be regarded as absolute, and the agreement to remove as a covenant, in which case the timber remains the property of the purchaser, although not removed within the time provided for."

And for this text are cited cases from Alabama, Michigan, and Massachusetts.

An examination of these cases will show that they are founded upon contracts whose language is different from the language of the present contract.

There are some cases which hold, apparently, a different doctrine—notably the case of *Kingsley* v. *Holbrook,* 45 N. H., 313, 86 Am. Dec., 173, and the *Macomber Case,* reported in 108 Mich., 491, 66 N. W., 376, 32 L. R. A., 102, 62 Am. St. Rep., 713.

But we are not satisfied with these cases, and the *Macomber* case appears to be modified and questioned in

Box Co. v. Moore.

the later case of *Hodges* v. *Buell* (Mich.), 95 N. W., 1078.

In *Utley* v. *S. W. Wilcox Lumber* Co., 59 Mich., 263, 26 N. W., 488, certain timber was sold, to be cut and removed within a specified time; and the court held, in substance, that after the expiration of that time the purchaser was entitled to only such logs as had been cut and were actually removed from the land within the time limit.

To the same effect, see *Richards* v. *Tozer*, 27 Mich., 451; *Wait* v. *Baldwin*, 60 Mich., 626, 27 N. W., 697, 1 Am. St. Rep., 551.

In the case of *Burch* v. *Elizabeth City Lumber Company*, 46 S. E., 24, the Supreme Court of North Carolina said:

"Under a contract conveying all the timber on certain lands, and allowing the grantee five years within which to cut and remove the same, whether viewed as a release or as a conveyance of the timber, and whether the title passed upon the execution of the conveyance, or not until the timber is cut and removed, the right of the grantee to cut and remove the timber terminates with the five-year period mentioned in the instruction, and he then has no further interest therein."

In the case of *Hoit* v. *Stratton Mills*, 54 N. H., 109, 20 Am. Rep., 119, which seems to hold a doctrine different from the one herein laid down, it is said at page 121 of 54 N. H. (20 Am. Rep., 119):

"If the deed conveyed the trees on condition that they be removed within a reasonable time, or conveyed only such trees as should be removed within that time, then the trees not removed within that time did not pass with the deed, but remained the property of the landowner."

In the case of *Strasson* v. *Montgomery*, 32 Wis., 52: "Provided always and these presents are upon this express condition, that the party of the second part shall take all of said trees and timber off of said land within four years from this date."

In construing this contract, the court said that the defendant had no right to cut and remove the timber after the expiration of the four-year limitation in the deed to White.

Following this case, the court in the case of *Golden* v. *Glock*, 57 Wis., 118, 15 N. W., 12, 46 Am. Rep., 34, said:

"As stated, in substance, in *Strasson* v. *Montgomery*, the legal effect of the instrument was to convey all the trees and timber designated which should be removed within the time prescribed, and such as remained thereafter should belong to Allen or his grantee of the premises. Such being our construction of the deed, we hold . . . that the plaintiff has no right to any of the trees and timber not removed from the premises prior to April 20, 1880, at which time the limitation in the deed under which he claimed expired."

In the case of *Saltonstall* v. *Little*, 90 Pa., 422, 35 Am. Rep., 683, the language in the deed was this: "Also

reserving unto the parties of the first part hereto, their heirs and assigns, all the pine timber on the aforesaid six tracts of land, together with the right and privilege to cut, remove, take, and carry away the same, or any part thereof, at any and all times, also the right of ingress and egress at all times, for the space of twelve years from the date first above written, for the purposes aforesaid."

The court said:

"Whether we regard the clause in controversy as a reservation or an exception, the result is the same, for in either event Kingsbury, or his grantee of the timber, was restricted to twelve years within which to cut and remove it. It was the reservation of the timber for twelve years, and no longer. After that time the trees remaining passed with the grant of the soil to which they were attached."

These authorities support the conclusion at which we have arrived, and which we think is obvious and plain, without the aid of authorities, from the terms of the contract itself.

It does not definitely appear whether the logs in question were all cut after the sale of the land to the Mengal Box Company or not, but the evidence tends to show that they were cut after that date. This is only important as bearing upon the question of title in the Mengal Box Company to the logs in controversy, and its right to bring a replevin suit to recover them.

We are of the opinion that, by the deed executed by

Marley to the box company to the land, the title to all the trees standing upon it at that time passed to the box company, subject to be defeated only if Moore & McFerrin should cut and remove them, or any of them, before the expiration of the time limit.

The effect of this contract of sale an conveyance to the box company was not only to transfer the land and the growing trees upon it to the company, but was also to substitute the company to all the rights which Marley had in the land, subject to the contract made with Evans.

If it should be true that some of the logs had been cut before the sale to the box company, and that the result was to make them personalty, so that they would not pass with the conveyance of the land, still they were mingled and confused by Moore & McFerrin with the other logs cut after the conveyance to the box company; and in such a case, under the doctrine of mixing or confusion of goods, the box company would have a right to recover the whole of them.

It was evidently the intention of Marley, in his conveyance of the land to the box company, to substitute them to all his rights in and to the timber upon the land, whether cut or standing; subject to the contract with Evans.

We are of opinion, therefore, that there is no error in the decree of the chancellor, and it is affirmed, with costs.