On Rehearing.
LAND, J.
On May 6, 1901, Orville Thibo-daux sold, ceded, conveyed, abandoned, and delivered unto C. P. Smith & Oo. “all the cypress timber fit for mill purposes” then contained on a certain tract of land, “excepting such trees as are commonly used for making pickets,” for the price of $300, cash in hand paid, subject, however, to the following stipulation:
“The said O. P. Smith & Co. are to have any and all rights and privileges that may be necessary or convenient for them to deaden, fell, float, raft, convey and take said timber away from the land described, and shall have this exclusive right and privilege for a term and period of five years. Said O. P. Smith & Co. shall further be entitled to such rights of way for canals, float roads, and any and all rights of passage either through the swamp or the high land above described as may be necessary for them to pull timber and take same away from said property.”
Sales of standing timber are of comparatively recent date in this state, and this is the first contract of the kind that this court has ever been called upon to construe and interpret. Such sales contemplate the removal of the timber sold within a reasonable time, or within the time fixed by the contract. When the term is fixed, the courts of our sister states differ as to the legal consequences of the nonremoval within the term stipulated. Defendants’ counsel cite a line of cas *841 es holding that no right or title exists in the grantee after the expiration of the time specified in the deed, and that the title to the timber reverts to the grantor. Counsel for plaintiff cite a line of authorities holding that the failure to remove within the term does not divest the title of the grantee, though it may forfeit his right of entry, and make him liable for damages.
The first theory is sustained by the recent case of Clark v. Ingram Day Lumber Company (Miss.) decided in May, 1907, and reported in 43 South. 813 et seq. In that case there was a cash sale with warranty, of all saw log timber on a certain tract of land. It was further agreed to give the purchaser three years to remove the saw .logs from the land. At the expiration of the time limit the purchaser had not removed from the premises all the timber which had been cut thereon under the contract. The court held that the logs which had been cut but not removed within the term agreed upon, became, at the expiration of the three years, the property of the grantor; citing Boisaubin v. Reed, 41 N. Y. 323, and many other cases, holding that it was the intention of the parties to such contracts to limit the right to take and carry away timber, and the term within which the vendee or his representatives might lawfully enter upon the land. In Adkins v. Huff (W. Va.) 52 S. E. 773, 3 L. R. A. (N. S.) 649, the same doctrine was applied to a ease where a vendor of a tract of land reserved to himself certain timber thereon, to be removed within 34 months. The court said that there was no difference in. principle between a grant of the timber on a tract of land and a reservation thereof in a deed conveying away the land, and that, “by the great weight of authority, it is determined that no right or title exists in the grantee, after the expiration of the time specified in the deed or contract,” citing cases from courts of last resort in Maine, Yer-mont, Massachusetts, New York, Ohio, Michigan, Minnesota, and Wisconsin. The case note states that the conclusion in Adkins v. Huff is supported “almost unanimously by the eases passing upon the question.”
In McRae v. Stillwell, 111 Ga. 65, 36 S. E. 604, 55 L. R. A. 513, the grant was of “all the pine timber suitable for sawmill purposes.” The court held that it was incumbent on the grantee to remove such timber from the land within a reasonable time from the date of the conveyance, and that on failure so to do his interest in the timber ceased and determined. The court, after a review of the authorities, said:
“It is true that the effect of the paper is to pass title to the timber, but the estate in the timber is determinable, and comes to an end after a lapse of time which would be reasonable time to be allowed to the grantee to enter and remove the timber from the land. Under this construction, after the lapse of a reasonable time, the timber again becomes the property of the grantor. Such a construction prevents the anomaly which is apparent in Boults v. Mitchell, 15 Pa. 371, and Hoit v. Stratton Mills, 54 N. H. 109, 20 Am. Rep. 119, where the instrument under construction in each case was held to authorize an entry for the purpose of removing the timber only for a reasonable time, and that an entry after the lapse of such a time was unlawful, but that, the timber still belonging- to the person guilty of making the unlawful entry, the value thereof should not be taken into account in estimating the damages for the trespass.”
The case note No. 2, 55 L. R. A. 526, says:
“The cases hold almost without exception that the purchaser has no title to any timber which is not cut at the expiration of the time specified, although a very few cases hold that the title to the timber in such case is still in the purchaser, but that the right to enter for the purpose of cutting and removing it is lost.”
In 28 Am. & Eng. Enc. Law (2d Ed.) p 541, we find this statement in respect to such contracts:
“Contracts for the sale of standing trees to be removed within a specified time have generally been construed by the courts as sales of only so many trees as the vendee might cut and remove within the time designated; the balance remaining the property of the vendor.”
On the other hand, it has been held by a number of courts that such a sale may be *843 regarded as absolute, and tbe agreement to remove as a covenant, in which case the timber not removed within the time provided for, and for the failure to remove, the vendor may bring an action for breach of covenant. Ib. This doctrine was followed in the case of Zimmerman Manufacturing Company v. Daffin (Ala.) 42 South. 858, reported in 9 L. R. A. (N. S.) 663. The opinion in that case shows that the organ of the court was sensible that the great weight of authority was the other way, as shown by his citing Am. & Eng. Ency. Law, supra, Mengal Box Co. v. Moore, 114 Tenn. 596, 87 S. W. 415, Hodges v. Buell, 134 Mich. 172, 95 N. W. 1078, and a number of other eases, holding that the title of the grantee terminates with his right of entry. The decision was based on Hoit v. Stratton Mills, 54 N. H. 109, 20 Am. Rep. 119; Irons v. Webb, 41 N. J. Law, 203, 32 Am. Rep. 193; Bennett v. Victor Lumber Company, 28 Pa. Super. Ct. 495; and Magnetic Ore Co. v. Marbury Lumber Co., 104 Ala. 465, 16 South. 632, 27 L. R. A. 434, 53 Am. St. Rep. 73. In the last-cited case no time limit was fixed, and five years later the grantor sold the land to a third person with the following proviso or reservation:
“But it is understood and agreed that the timber, with right of way to reach same, has been sold.”
This ease might well have been decided on the theory that the purchaser acquired no reversionary rights to the timber that had been previously sold. In the principal case, the deed was in the usual common-law form, conveying the timber and free rights of way to the purchaser, “their successors and assigns forever.” At the conclusion of the instrument was written the following stipulation:
“The said C. W. Zimmerman & Co. is allowed two years from this date within which to cut and remove the timber hereinabove conveyed.”
The grant in perpetuity of the timber and free rights of way over the land, was well calculated to raise doubt as to whether the final stipulation of the contract was intended as a condition or merely as a covenant. There are other cases pro and con which need not be cited, as they throw no additional light on the subject under discussion, and do not affect the weight of authority.
While much can be said on both sides of the question, we are of opinion that both the weight of authority and of logic is in favor of the general rule stated in Am. & Eng. Enc. Law, supra. This rule, moreover, accords with the manifest intention of the parties that the rights conveyed should be exercised within the term granted, or within a reasonable time, when no term is stipulated. The contrary doctrine leads to the anomalous result that the purchaser after the lapse of the term, expressed or implied, retains the title to the timber, but cannot enter on the land for- the purpose of re moving his own property without committing a trespass. This doctrine seems to be based on the separate construction of different parts of the contract. Hence, the want of harmony in the result. The construction of the contract as a whole, in the light of the peculiar nature of the property conveyed, harmonizes all of its provisions, and leads to no absurd results. Thus, the legal effect of the conveyance of the timber is modified by the subsequent provision limiting the period of the right of entry on the lands. The result is a sale of so much timber as the purchaser may cut and remove within the time designated. See Hall v. Eastman, Gardiner & Co. (Miss.) 43 South. 2, decided in January, 1907.
Our statutes and decisions throw little or no.light on the subject. There is no analogy between the sale of corporeal movables, which can be delivered or stored, and the *845 sale of standing timber. In tbe case at bar the parties declare in tbeir contract that delivery has been made. Delivery takes place by the bare consent of the parties, “if the things cannot be transported at the time of sale.” Civ. Code, art. 2478. Hence the arguments based on the assumption of nondelivery are without force. The gist of the dictum in Lumber Company v. Sheriff and Tax Collector, 106 La. 414, 30 South. 902, is thns correctly expressed in the syllabus:
“Standing timber is property susceptible of being acquired separately from the land on which it grows, and being thus acquired is assessable for taxation, in the name of the owner, while the land itself is assessable to the owner of the fee. That is to.say, the owner of the land must pay taxes on it, the owner of the timber taxes on it, and the assessments should be separate.”
In that case the nature of • the grantee’s title quoad the grantor was not involved. The question was one of separate assessment and taxation of different interests in the same property. In Williams v. Sheriff & Tax Collector, 107 La. 92, 31 South. 926, the timber contract was construed not to vest a present title in the grantee, and it was held that the land and timber thereon were properly assessed to the grantor. The court expressly stated that in passing upon the issues involved in the litigation, it was not determining the property rights of the parties' to the agreement. Ib., page 101 of 107 La., page 930 of 31 South. It may be freely conceded that taxation may follow a defeasible title without regard to the reversionary rights of third persons. In Broussard v. Verret, 43 La. Ann. 929, 9 South. 905, the litigation was between different parties who had obtained permits from the school board to deaden, cut down, and trail trees, for the consideration of $1 per tree floated. The plaintiff’s permit was first in time, and he sued the defendants for the value of 600 trees deadened by him, which he alleged they had converted to their own use. The court gave judgment for plaintiff for the value of such trees as had been deadened by him during the period of his permit, but rejected his demand as to trees deadened thereafter. The court construed the permit as authorizing the defendant to prosecute to its legitimate end any work commenced under the contract.
In the case at bar, the plaintiff company acknowledged its inability to reach this timber with its canal before the five-year time had expired, and offered to pay defendants for an extension of time. Defendants declined to grant an extension, and thereupon plaintiff company in March, 1906, went upon the land and felled the timber promiscuously, cutting down small trees not within the purview of the contract, and large trees reserved for picket timber. The timber was cut in a hurried and wasteful manner without regard to consequences, and laid where it had been felled when the time limit expired on May. 6, 1906. This was no bona fide attempt to cut the timber for removal, but a desperate expedient to make a showing of partial performance during the closing days of the contract.
“It would seem that, by the weight of authority, the mere cutting of timber within the time specified for its removal does not prevent the title thereto from reverting back to the owner.” McRae v. Stillwell, 55 L. R. A. 530, note 5. Also authorities supra.
This is logical where the contract requires that both the cutting and removal must take place within the specified time. We think, however, that we are safe in holding that such cutting must be seasonable, and with the bona fide intent to remove the timber before the expiration of the time limit. Where it is evident that the timber, if cut, cannot be so removed, there is no equity in favor of the grantee.
After a careful consideration of this case, we see no good reason to change our former conclusions.
*847 It is therefore ordered that our former decree herein be reinstated, and made the judgment of the court.
MONROE, J., dissents.