W. P. RODGERS v. ANDERSON-TULLY CO.

Western Section. November 1, 1929.

Petition for Certiorari denied by Supreme Court, February 1, 1930.

Fred Callahan, R. G. Draper and R. G. Kinkle, all of Memphis, and J. L. Fry, of Union City, for appellant.

Brown & Waldauer, of Memphis, for appellee.

OWEN, J. W. P. Rodgers, the complainant below, has appealed from a decree dismissing his bill. The complainant sought to recover $1520 from the defendant. The defendant is a corporation at Memphis, Tennessee, engaged in buying timber and manufacturing it into lumber. It was alleged that the complainant was the owner of certain timber located on what is known as the Turnage Place in Tipton County, Tennessee, which place is situated and lying on the Mississippi River. It was alleged that the defendant, on the 5th day of March, 1927, wrongfully entered upon the lands of complainant and removed and converted said timber which it was claimed belonged to the complainant. The defendant admitted removing the timber which had been cut into saw logs and placed on the bank of the Mississippi River but the defendant insisted that it was the rightful owner of said timber at the time the timber was removed and for some time prior thereto; that the defendant acquired said timber from one M. W. Rast. Rast acquired the timber from Mrs. Alice May Polk and W. R. Barksdale, Jr., who owned the Turnage Tract of land prior to their sale to the complainant. M. W. Rast had purchased the right to the timber from his brother, R. D. Rast. R. D. Rast had purchased the timber by contract from Mrs. Polk and Barksdale on September 12, 1924. It appears that at the time of the timber contract with R. D. Rast, R. D. Rast was cultivating, as a tenant, the Turnage Tract and he also cultivated the cleared land on the Turnage Tract during the year of 1925. We quote from the timber contract the following:

"THIS CONTRACT, This day entered into by and between R. D. Rast, first party, and Alice May Polk, and W. R. Barksdale, Jr., second parties, WITNESSETH:

"That for the considerations hereinafter mentioned, second parties do by these presents hereby bargain, sell and convey unto first party, his heirs and assigns, forever, all of the timber now standing and growing on what is known as the Turnage Place, in Tipton County, Tennessee, the said premises be-

ing particularly described in trust deed executed by M. W. Rast and F. S. Rast, as of record in Book 122, page 139, Register's Office of Tipton County, Tennessee, to which reference is here made.

"TO HAVE AND TO HOLD unto the said R. D. Rast, his heirs and assigns, forever, with whom we covenant that we have a good and perfect right to sell and convey the timber, as is herein done, that the same is unincumbered and that the title thereto we will forever warrant and defend against all lawful claims whatsoever."

The consideration for this conveyance is as follows:

"The first party has this day paid to second parties One Thousand and No/100 Dollars ($1,000) cash in hand, the receipt whereof is hereby acknowledged, and agrees to pay for all timber at the rate of Four and No/100—Dollars ($4) per thousand feet, the said timber to be cut and hauled to the bank of the river, where it is to be scaled by the purchaser, second parties being furnished with a duplicate scale sheet, and a check payable to their order for the said timber at the rate of Four and No/100 Dollars ($4) per thousand feet; the One Thousand Dollars ($1,000) cash in hand paid being the first payment on said timber, and after the said One Thousand Dollars ($1,000) has been applied, then the balance of the timber to be paid for as is herein provided.

"Second parties also convey unto first party, his heirs and assigns, an easement and rights of ingress and egress over and upon any of the property herein referred to that may be necessary to properly handle and·haul the said timber, together with sufficient dumping space for the same.

"First party agrees to begin cutting and hauling timber at once, and to have all of the same cut and removed from the land on December 31, 1926, at which time first party's right to any of the timber shall cease."

This timber contract was duly recorded in the Register's Office of Tipton County, Tennessee on .the 5th day of March, 1925.

Mrs. Alice May Polk and W. R. Barksdale, Jr., conveyed the Turnage Tract, containing 1631 acres, to the complainant, W. P. Rodgers, by warranty deed. There was no mention in this deed of the timber contract with Rast. It appears that R. D. Rast cut the greater portion of said timber purchased during the year 1925. On the first day of February, 1926, R. D. Rast sold his timber rights to his brother, M. W. Rast. M. W. Rast, shortly after he became the purchaser, had a settlement with Mrs. Polk and Barksdale, the original owners of the Turnage Tract and the original conveyors to R. D. Rast. M. W. Rast paid $300, estimating the remaining timber to be 75,000 feet. M. W. Rast cut all the stand-

ing timber, which was conveyed to him by his brother, prior to December 31, 1926. Rast hauled the timber from the woods and placed it on the dumping ground selected by Barksdale, the former owner, and R. D. Rast the purchaser, which dumping ground was on the bank of the Mississippi river and on land included in the Turnage Tract. M. W. Rast sold the logs cut and removed from the timber land during the year, 1926, to the defendant. In November, 1926, the defendant scaled 139 logs amounting to 16,761 feet. On January 22, 1927, the defendant rendered Rast an additional account showing that defendant had scaled 348 logs which amounted to 60,282 feet. It is these two amounts of timber complainant is insisting is his. The defendant tried to scale the last mentioned logs some weeks prior to the time that they were scaled but found that the condition of the river and high water would not permit the scaling, which means measuring and ascertaining the number of feet in each log.

Defendant's tow boat and barges came for these logs about the first of March, 1927, and complainant's agent notified the captain of the tow boat that complainant was claiming the logs and forbid the logs being towed away, so it appears that M. W. Rast cut no logs after December 31, 1926, in fact all the logs cut by Rast were cut and placed on the bank of the river at the landing in the year, 1926, and were sold to the defendant in the year 1926. The last lot of logs were not scaled and taken up in 1926 because of the stage of the water. The Chancellor was of the opinion that the contract had been substantially complied with and that the defendant was not guilty of conversion. The complainant duly excepted, prayed and perfected an appeal and has assigned five errors. These errors insist:

(1) The court erred in dismissing complainant's bill.

(2) The court erred in construing the contract so as to give a third party not in contemplation of the parties to contract greater rights than the original party.

(3) The court erred in holding that the contract had been substantially complied with in removing the logs to the dumping ground on complainant's land.

(4) The court erred in holding that the failure to remove the logs within the time as provided in the contract was excused by condition of the river.

(5) The court erred in deciding the case on a point not having been set up as a defense in the answer.

We do not find that the court excused the defendant on account of the condition of the river and the fourth assignment is overruled. The court merely stated that on account of the high water the defendant was not able to scale the logs during the latter part of

December, 1926, and as to the fifth assignment, the entire contract was before the court for construction, the complainant was suing to recover for his property. He was relying upon the contract made by Mrs. Polk and Barksdale to Rast. The defendant relied upon its right as a purchaser from Rast under the terms and conditions of the contract, the fifth assignment is overruled. Complainant relies upon Bond v. Ungerecht, 129 Tenn., 631, and Mengal Box Co. v. Moore, 114 Tenn., 596. In these two reported Tennessee cases it was held that where the contract requires the timber conveyed to be removed from the land within a given length of time the title to the timber not removed within such time reverts to the owner. It appears that the only way or means Rast had for removing the timber cut was to take it to the bank of the Mississippi River. This Turnage Place had a long river front, some of the timber land came out to the river bank while there was some cleared land between the river and the timber land on the Turnage Tract.

Chancellor De Haven rendered a written opinion in the instant case which was made a part of the record and we quote from his opinion as follows:

"If the contract had merely conveyed said timber to the grantee, with a fixed time for its removal from the land and provision for reversion of the title as to timber not cut or removed, there would be no difficulty of decision. The contract, however, contains other provisions which must be given force and effect. It is provided that the timber was 'to be cut and hauled to the bank of the river, where it is to be scaled by the purchaser, second parties being furnished with a duplicate sheet, and a check payable to their order for said timber,' etc. The grantors, under this provision of the contract, had the right to insist, as did also the grantee, that the logs cut should be hauled to the bank of the river 'where' they were to be scaled 'by the purchaser.' The grantee was without right, under the terms of the contract, to haul logs anywhere else than to 'the bank of the river.' This meant, of course, he should haul the logs to a point on the river bank on the grantor's land; where the logs were to remain until sold and scaled by the purchaser. I say 'until sold,' because there could be no 'purchaser' until there was a sale. The contract further provides for 'a sufficient dumping space' for the logs. This means a space on the river bank, where the contract required that the logs should be hauled. The contract required the logs to be removed from the place where cut to the river bank, where they were to be sold, and from which place they could only be shipped by river. Transportation by boat was the

only way available. Whether or not a boat could reach the landing, where the logs were dumped, depended on the stage of the river. When the river was low a boat could not reach the landing; when the river was over the landing the logs could not be scaled. These were matters over which the grantee had no control. The grantee substantially complied with the contract when he removed the logs from the timber section of complainant's land to the landing, or dumping ground, on the river bank, promptly sold them, and the purchaser, defendant here, promptly undertook to scale them and ship them and did so as soon as the stage of water in the river permitted. The grantee paid the grantors for all the logs and the purchaser paid the grantee for them.

"The grantee, in my judgment, under the terms of the contract, had the legal right to keep the logs on the river bank, at this landing, until scaled by the purchaser. It would be the duty of the purchaser, of course, to scale and remove the logs within a reasonable time. It appears from the record that defendant acted as speedily as the conditions of the river permitted. There was no delay on the part of the grantor in selling the logs and no unreasonable delay on the part of the purchaser in scaling and shipping them.

"The contract requires that the timber on the land described should be cut and removed from the land on December 31, 1926.

"If this provision of the contract stood alone, then the grantee would have had no title to logs cut but not removed from off of said land by the date mentioned. Ordinarily the removal of logs from one part of the grantor's land to another part, embraced within the timber deed, is not compliance with a requirement that the logs be moved from the land. Here, however, there exists another provision, which must be given force and effect, requiring the logs to be hauled to the river bank, where they were to be scaled by the purchaser. Construing the contract as a whole, as it must be considered, its true intent and meaning is that the grantee was to remove all logs cut from the land to the river bank, there to be sold by him and scaled by the purchaser, and the grantee's right to any of the timber (which includes logs) not so removed should cease on December 31, 1926."

We are of the opinion that under the terms and conditions of the contract sought to be enforced here and upon which complainant relies for relief, the complainant is not entitled to recover from the defendant.

The facts of this case are distinguished from the facts of Bond v. Ungerecht and Mengal Box Co. v. Moore, supra. Rast had cut

all the logs on the Turnage Place he tried to cut by December 1, 1926, he hauled them from the woodland to the place called the dumping ground or shipping point on the bank of the river, which dumping ground had been designated by the owner Barksdale, and Barksdale had also required these logs to be scaled before they were removed from the dumping ground and Barksdale was to be furnished with a duplicate of the scale or measurements. The defendant knew that it had to furnish Barksdale with a duplicate of the scale; so that Barksdale and Mrs. Polk would know who the purchasers were and the amount of the purchase so that they would have no trouble in getting an accurate statement as to the amount due them from Rast. Prior to December 31, 1926, complainant was at liberty to do what he pleased with his woodland. Rast was no longer claiming a right of ingress or egress over any of the lands. The only thing complainant could say was, "these logs are mine because you did not drop them in the Mississippi River instead of leaving them on the bank of said river where Mr. Barksdale, the original owner, had said they must be deposited until after they were scaled." In the case of Plummer v. Reeves (1907), 83 Ark., 10, the court in construing a contract similar to the one we have before us said:

"The undisputed evidence shows that the logs alleged to have been converted were removed from the place where they were cut to a point on a navigable river, from which they were to be shipped. This was a substantial compliance with the contract, although the river bank was part of the tract from which the timber was cut . . . After these logs had been cut and removed to the river bank for shipment, the contract was performed, and the title to the logs fully vested in the defendant, and the fact that they were gathered up afterwards and floated or shipped down the river did not constitute conversion."

It results that the assignments of error are all overruled. There is no error in the decree of the Chancellor and it is affirmed. Complainant and his surety will pay all the costs of the cause for which execution will issue.

Heiskell and Senter, JJ., concur.