| 59 | 263 |
| 108 | 492 |
| 59 | 263 |
| 134 | 166 |
| 59 | 263 |
| 135 | 428 |

WILLIAM S. UTLEY v. THE S. N. WILCOX LUMBER COMPANY.

*Sale of standing timber—Agreement for removal within a fixed time, limits operation of contract to timber cut and removed within the specified time.*

Upon a review of the contracts under which plaintiff claims the right to recover in this case, and the acts of the parties in connection therewith, see opinion.

*Held,* that it clearly appears that it was the intention of the parties to said contracts to limit the time in which the timber sold to plaintiff was to be cut and removed, and that the sale was confined to such timber as he should cut and remove within the time specified; that the case comes directly within the previous decisions of this Court and is ruled by said cases: *Monroe v. Bowen,* 26 Mich. 523; *Richards v. Tozer,* 27 Mich. 451; *Johnson v. Moore,* 28 Mich. 3; *Haskell v. Ayres,* 32 Mich. 93.

Error to Newaygo. (Fuller, J.)    Argued January 7, 1886.    Decided January 20, 1886.

Trover for value of pine saw logs.    Plaintiff brings error. Affirmed.    The facts are stated in the opinion.

*George Luton* and *A. G. Day,* for appellant:

The title to the timber passed to Utley under first contract upon payment of $1,400 of the purchase price, and he never reconveyed the same to Wilcox:   Benjamin on Sales, §§ 358, 360, 365; *Merchants' Bank v. Bangs,* 102 Mass. 291–5; *Dunning v. Gordon,* 4 U. C. Q. B. 399; *Hanson v. Meyer,* 6 East. 614; *West v. Platt,* 127 Mass. 367; *Colwell v. Keystone Iron Co.,* 30 Mich. 51; *Burrows v. Whitaker,* 71 N. Y. 291.

The language of the first contract is, that Wilcox "agrees to sell and Utley agrees to purchase *all* the pine timber on certain described lands," and is as much a sale of specific property as if 500 tons of coal were the subject-matter of the sale.   If the timber had been destroyed by fire after Utley took possession, he would have been still liable to pay balance of purchase price.   There was no condition leaving title in Wilcox, and under the contracts and facts the title at once passed to Utley, who assumed the risk of loss, and has a

right to possession and to bring this suit: *Whitcomb v. Whitney,* 24 Mich. 486 ; *Bigler v. Hall,* 54 N. Y. 167.

Having never surrendered possession and having forbade defendant from cutting the timber, there was a delivery, as well as a sale evidenced by writing, and an ouster by defendant : *West v. Platt,* 127 Mass. 367 ; *Green v. Bennett,* 23 Mich. 464. There was no clause providing for a re-entry in any of the contracts, nor anything declaring Utley's title void on non-payment or non-removal, within a certain time : 2 Was. Real Prop. 3.

*W. D. Fuller,* for defendant :

Under the first contract Wilcox gave Utley until May 1, 1879 to cut and remove the timber, and then extended this limit to November 14, 1879, after which date he sold the remaining timber to defendant and under any fair construction of these contracts Utley ceased to have any claim to the remaining timber after the date last named.

This is not a case calling for the citation of authorities, but must be decided upon common sense, business principles, as applied to the written contracts of the parties and their action thereunder.

CHAMPLIN, J. The plaintiff brought an action of trover against the defendant for the conversion of certain pine saw-logs. On the first day of November, 1877, one Sextus N. Wilcox was the owner of certain land situated upon sections 31 and 32, in township 14 N., range 11 W., upon which was a quantity of standing pine timber trees, estimated to contain 1,700,000 feet, more or less, of merchantable pine saw-logs. On that day he entered into a written contract with the plaintiff in this suit, by which plaintiff agreed to purchase, and Wilcox agreed to sell to him, said timber for the sum of $2,500, payable in two equal payments on the first days of June and July, 1878. To enable plaintiff to make the purchase, Wilcox agreed to advance plaintiff, in supplies necessary to prosecute the job, a sum not exceeding three dollars from the store of S. N. Wilcox & Co., or in lumber from S. N. Wilcox Lumbering Company, before the cutting was commenced, and to pay the further sum of seventy-five cents per thousand feet as fast as the logs

were skidded on said land, and one dollar per thousand feet as the logs were delivered in and along the banks of the Muskegon river. Plaintiff agreed "to commence at once on said job, and to prosecute it with vigor so as to get in all the timber on said land during the" then "coming winter." It was further agreed that, should the winter be such that all of the saw-logs could not be gotten in before the snow went off in the spring of 1878, plaintiff was to have the right to cut and remove the balance of the saw-logs on said lands in the winter of 1878 and 1879, or until May 1, 1879, to finish the job, but the entire purchase price of said timber, and the advances made, it was agreed should be a lien upon the logs, to be held by Wilcox until paid, or assumed by a purchaser of the logs who should be satisfactory to Wilcox; and it was agreed that, should plaintiff succeed in selling the logs at any time during the winter or spring to any man or firm who would be satisfactory for pay to said Wilcox, in the amount of the $2,500 above agreed upon as stumpage, to be paid as above, and in the amount of supplies and advances up to that time, then, from that time forward, Wilcox was not to be obliged to advance anything further. Wilcox was to have the right to reject any purchaser who might not be satisfactory to him, and should no purchaser be found who was satisfactory to both parties, then the logs were to be scaled, and marked with a marking hammer of Wilcox; and if a sale of the logs was not made by plaintiff before March 10, 1878, Wilcox had the privilege of taking them at five dollars per thousand feet, and out of the purchase price he was to retain and repay himself all balances due him under the agreement; and for two-thirds of the surplus he was to pay plaintiff in supplies in sixty days, and the balance in sixty days thereafter.

The legal effect of this contract was that Wilcox, the owner of the land, sold to Utley the pine timber thereon for $2,500, Utley to cut and remove the same therefrom during the winter of 1877–1878, or, if it could not be done for lack of snow, then he was to cut and remove the same during the winter of 1878–79, and before May 1, 1879. The title of

the timber passed to Utley immediately upon the execution of the contract, Wilcox to have a lien thereon, as between him and Utley, for the purchase money, advances, etc. The license to enter and remove the timber, continued, in the contingency stated, until the first day of May, 1879 : *Johnson v. Moore,* 28 Mich. 3 ; *Monroe v. Bowen,* 26 Mich. 523 ; *Richards v. Tozer,* 27 Mich. 451; *Haskell v. Ayres,* 32 Mich. 93. The express agreement of Utley was that he would commence at once on the job, and prosecute it with vigor, so as to get in all the timber on said land during the coming winter, and, in case the winter was such that all of the saw-logs could not be gotten in before the snow went off in the spring, he should *have the right to cut and remove* the balance of the saw-logs on said lands in the winter of 1878– 79, " or until May 1, 1879, to finish said job." The intention is clearly expressed to limit the time in which he might cut and remove the saw-logs, and is ruled by the cases above cited.

The record shows that Utley went on, and cut, up to April 18, 1878, under the above contract, 5,272 pine saw-logs, amounting to 878,024 feet, board measure, 1,365 of which had been put afloat in Muskegon river by Utley, 3,757 were on the skids on Utley's job, 414 were on the prairie, and 336 were at Murphy's farm. By the contract Utley had the next winter to put these logs in the river, and as many more as he desired to cut; but, with reference to these logs already cut, and not put in, the parties made a new contract, by which Utley agreed to put them in the Muskegon river on or before September 1, 1878. Wilcox had advanced, up to April 18, 1878, $2,178.81, and Utley also received from Wilcox horses, trucks and other property, amounting to $1,030.18. Utley had not been able to effect a sale of the logs, and he, by that agreement, sold them to Wilcox for $6.50 per thousand feet ; the sum of $1.75 to be paid on each thousand feet on the Utley job, which were cut on the eighteenth of April, 1878, as fast as the same were delivered under this contract; and the balance, if any, when the contract was fully performed, after applying on the price the

amount of $4,608.99, which included the advances made by Wilcox, the horses, trucks and other property sold to Utley, and $1,400, being part of the $2,500 agreed to be paid for the pine timber mentioned in the first-named contract. The performance of this contract was secured by a chattel mortgage. Utley went on, and put in the logs, and on September 10, 1878, the parties had a settlement, by which it appeared that Utley then owed to Wilcox a balance of thirty-nine dollars. November 14, 1878, two contracts were entered into; one between Wilcox and Utley, by which it was agreed that Wilcox owned the lands mentioned in the first-named contract, "and being partly cut over one year ago by said Utley, and on which it is supposed there is from eight (8) to twelve (12) hundred thousand feet of saw-logs of similar quality to those cut last year." The contract then continues as follows:

" And whereas, Torrent & Ducey, of Muskegon, Michigan, have agreed this day to purchase said logs of said Wilcox at five dollars and fifty cents ($5.50) per thousand feet afloat in Muskegon river, by a written agreement between him and said Torrent & Ducey, which is hereby referred to for more specific particulars; and whereas, said Utley wants to put said timber in for said Wilcox and said Torrent & Ducey, and by this agreement promises and binds himself to put said logs into said Muskegon river in time for the drive on Muskegon river, in year 1879, for same terms of payment as those made by Torrent & Ducey to Wilcox, and said Utley is to pay one-half the scaling, and board the scaler while scaling said job—the terms of pay being one dollar and twenty-five cents ($1.25) per thousand (M) feet as fast as cut and skidded, scaled and reported, and two dollars and twenty-five cents ($2.25) when drawn to Muskegon river, and the balance in notes due June 15, July 15, and August 15, 1879 ; and as it is said Wilcox who owns said timber, and who expects to advance the supplies to Utley on said job, and who is to receive and handle the money for said logs—it is mutually agreed by and between the parties hereto that said Wilcox shall retain out of such payments the full pay for such advances as he may make from time to time, and may also retain out of the final payments for his timber the sum of fifteen hundred dollars ($1,500) in full payment for all such pine saw-logs as he may cut and

remove from said land within one year from this date. And said Utley further agrees to and with said Wilcox to cut and put afloat in said Muskegon river for said Wilcox all the timber which will make twelve inches and upwards diameter saw-logs of merchantable quality, on the east half of the southeast quarter of section five (5), in town (13) north, of range eleven (11) west, in said Newaygo county, Michigan, and to pay half of the scaler's wages, and cut the logs, and get them afloat in Muskegon river in usual time, in 1879, for the sum of two dollars and fifty cents ($2.50) per thousand feet, Doyle's scale, payable in supplies and money at the rate of one dollar ($1.00) per thousand feet as fast as cut and skidded, and one dollar and twenty-five cents ($1.25) per thousand feet when drawn, and balance when afloat, as above; but out of these various payments said Wilcox is to receive full payment for all the old store account of said Utley due to the firm of S. N. Wilcox & Co., at White Cloud; and all account for lumber and so forth to them, or to the S. N. Wilcox Lumbering Company, from said Utley, or said Utley and his son, as copartners, with proper interest on same, is to be reserved out of the prices for putting in above referred to, and said Utley agrees and binds himself to perform as above, in every particular, and to contribute all horses, sleds, trucks, and supplies to said job which he now owns in whole or in part, or which he may hereafter acquire, or shall be supplied by said Wilcox, and these supplies, teams, and so forth shall be held as property of said Wilcox as security for the performance of said contract above mentioned, and for the security for any advances said Wilcox has made or may make to said Utley.

"In witness whereof, the parties hereto have signed this instrument in duplicate the day and date first above written.

"WILLIAM S. UTLEY.
"SEXTUS N. WILCOX."

The other contract was executed between Torrent & Ducey and Wilcox, by which it was recited that Utley had that day agreed with Wilcox to cut and put afloat in Muskegon river, in time for the drive of 1879, all the pine timber on the lands of said Wilcox, in township 14 N., range 11 W., on sections 31 and 32, which he (Utley) cut from last winter, and which logs were sold to Torrent & Ducey, and which are supposed to be about 1,000,000 feet, more or less. The price agreed to be paid was $5.50 per thousand feet,

and the terms of payment were the same as those stated in the contract between Wilcox and Utley.

This contract between Wilcox and Utley modifies the first contract between these parties in two particulars, and in but two particulars which are material to the questions under consideration : (1) Fourteen hundred dollars having already been paid on the twenty-five hundred dollars which was then fixed for the purchase price of the timber, by this contract such purchase price is increased four hundred dollars ; (2) the time for removing the timber by the first contract was limited to May 1, 1879, and by this contract the time is extended or fixed at one year from the fourteenth of November, 1878. No change is made in the ownership of such timber as plaintiff may cut and remove in the time limited. It is true that the sale of the logs to Torrent & Ducey was made by S. N. Wilcox, but the sale was made with the assent of Utley, and was for his benefit. Now; whether this contract is to be considered as a modification of the contract first entered into between Wilcox and Utley in the particulars above noted, or as a new contract, can make no difference in the result. Utley agreed to cut and put in all the logs upon the land, of twelve inches in diameter and upwards, in time for the drive of 1879, and Wilcox is to retain, out of the purchase price of the logs sold to Torrent & Ducey, "fifteen hundred dollars, in full payment for all such *pine saw-logs as he may cut and remove from said land within one year from this date;" i. e.,* from November 14, 1878. From all the contracts and acts of the parties in connection therewith, the intention clearly appears to limit the time in which the timber on the sections named should be cut and removed, and that the sale was confined to such timber as should be cut and removed within the specified time. The case comes directly within the previous decisions of this Court, and the court was not in error for directing a verdict for defendant, and it must be affirmed.

The other Justices concurred.