[Civ. No. 2034.   First Appellate District.—March 26, 1917.]

MERCEDES L. CALL et al., Respondents, v. JENNER LUMBER COMPANY (a Corporation), Appellant.

CONTRACT—SALE OF STANDING TIMBER—TIME FOR REMOVAL.—Under a contract for the sale of growing timber which provided that the cutting and removal should be completed within five years from the commencement thereof, and in no event later than July 1, 1915, at which time the premises were to be surrendered to the owner, the purchaser, where operations were begun and suspended, had not the right to resume operations after the expiration of five years from the time of such suspension, although such attempted resumption was prior to July 1, 1915.

ID.—TIME FOR REMOVAL OF TIMBER—PROVISION IN CONTRACT—CONDITION OF SALE.—A provision in a contract for the cutting of standing timber that the cutting should be completed within five years, and in no event to be carried on beyond a given date, is a condition of the sale, and not a covenant to remove the timber, and the purchaser can only take so much of the timber as he may cut and remove within the specified time.

APPEAL from a judgment of the Superior Court of Sonoma County.   Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

J. R. Leppo, for Appellant.

Geary & Geary, for Respondents.

KERRIGAN, J.—Action to enjoin the defendant from entering upon certain lands of the plaintiffs and cutting and removing the redwood and pine timber thereon.   The judgment went for the plaintiffs as prayed, and defendant appeals.

The predecessor of the plaintiffs on June 15, 1906, entered into a contract with the Western Redwood Lumber Company, the assignor of the defendant, by which it granted and conveyed to said Lumber Company the redwood and pine timber upon a tract of land known as Mayer's ranch or tract. Said contract was entered into pursuant to an option previously given fixing the price to be paid, and providing that the timber should be removed by July 1, 1915.   Among the

provisions of the contract by which the timber was conveyed to the Lumber Company were the following:

"It is further mutually agreed and made an express condition hereof that said party of the second part is to and will fully complete the cutting and removal of the said pine and redwood timber and trees hereby conveyed to it within the period of five years from the time when it shall commence to cut the same, but in no event later than the 1st day of July, 1915; that when it shall commence to cut and remove the said timber and trees it shall thereafter proceed with the cutting and removal thereof with due diligence and dispatch; and that as soon as it shall stop the cutting and removal thereof it is to and will surrender, turn over and deliver to said parties of the first part the full, actual and exclusive possession of the said Mayer Tract, and of every part and parcel thereof, to be by them thereafter held, possessed, used and enjoyed as of their first and former estate therein. . . .

"It is further mutually agreed and made an express condition hereof that all of the timber and trees purchased by or hereby granted and conveyed to said party of the second part are to and shall be cut and removed from the said Mayer Tract before the said 1st day of July, 1915, and that upon the expiration of the period ending on said last-named day, and by reason of the expiration thereof, this conveyance and all rights of the said party of the second part hereunder, if not previously determined, shall forthwith and wholly cease, determine, lapse and become void, and that it shall not have any right whatever at any time after said last-named day to enter upon the said Mayer Tract, or any part of the same, or to cut or to remove any of the timber, trees or wood growing or standing or lying or being thereon; also that any and all timber, trees, wood, logs or other products of the said land, or of the trees or timber thereon, which shall on said last-named day, or on the sooner determination of the rights of the said party of the second part hereunder, remain or be upon the said tract, shall belong absolutely and exclusively to said parties of the first part."

In the month of August, 1907, the Western Redwood Lumber Company proceeded to cut and remove the timber, and in a period of three months had cut and removed about one-half of the standing timber, at which time it became insolvent and ceased operations. Some three years thereafter the

defendant succeeded to the rights, if any at that time existed, under its said grant and contract, but did nothing toward resuming operations until some time during January, 1914, some six and one-half years after the Western Redwood Lumber Company had commenced the removal of the timber, and over six years after its cessation of operations, at which time it began to make preparations therefor. Immediately thereupon, to wit, on February 5, 1914, the plaintiffs served written notice upon the defendant not to enter upon the said tract of land or to cut or remove timber therefrom, and notifying it that the rights to the timber formerly owned by the Western Redwood Lumber Company had been terminated and had reverted to said plaintiffs. The plaintiffs through their predecessor and tenants were at all times, including the brief period of operation by the Lumber Company, in possession of the land involved in the action, using the same in connection with an adjoining tract for dairying purposes. After the shutting down of operations by the Lumber Company no attempt was made to preserve the railroad and other improvements upon the premises constructed by it to facilitate its work; the railroad was partly destroyed by slides and washouts; the cabins and cookhouse remained unoccupied; the wire rope and machinery were left out in the woods to rust. The doors and windows of the cabins were at all times left open, and the stove in the cooking-house fell to pieces. After the abandonment of the work of cutting and removing the timber, and until early in the year 1914, an employee of the Lumber Company or its successor, designated as a "care-taker," visited the Mayer Tract about once a month; but such visits were unknown to the plaintiffs, and resulted at no time in any effort or steps taken to preserve the improvements or personal property left by the Lumber Company at the scene of its former operations. The land both before and after the execution of the contracts upon which the defendant's rights are founded was at all times assessed to the plaintiffs and their predecessors, who paid all taxes thereon, and at no time was any interest therein assessed to the defendant or its assignor.

Upon evidence establishing the foregoing state of facts the court found that on October 30, 1907, the Western Redwood Lumber Company and all of its agents and employees entirely withdrew from the land; and that neither they nor the

defendant has thereafter ever been in possession thereof or exercised acts of ownership with regard thereto, but that the plaintiffs, ever since said thirtieth day of October, 1907, have been in possession of the lands and of all the standing and growing timber thereon; and as a conclusion of law found that the defendant has no interest in the pine or redwood timber growing upon said tract.

In support of the appeal it is the principal contention of the appellant that under the contract in suit, construed in connection with the option which preceded it, no forfeiture of the right to cut and remove the timber could occur before July 1, 1915. With this contention we cannot agree. We are of the opinion that the rights granted to the assignor of the defendant are to be found in the contract of June 15, 1906, entered into upon the exercise by said assignor of the option previously given to it, and that the plain meaning of the provisions of that contract above quoted is that the right of the grantee thereunder to cut timber should expire *ipso facto* at the end of five years from the commencement of the cutting, and in any event should expire on July 1, 1915, so that if the grantee delayed the commencement of its operations until a point of time less than five years prior to said last-mentioned date the five-year period would be thereby correspondingly curtailed. It is not necessary in sustaining this judgment to go so far as to hold that the grantee's rights were forfeited by its discontinuance of operations on October 30, 1907. It is sustainable upon the theory that those rights continued in force five years from the commencement of the removal of the timber, which would be in August, 1912. As we have seen, it was nearly two years later than this date that the defendant prepared to re-enter the lands for the purpose of resuming operations. It has been frequently and expressly held that a sale of standing timber, the same to be removed within a specified time, is a grant of only so much thereof as shall be removed within that period.

The rule applicable to contracts such as the one in suit is stated in 25 Cyc. 1551: "It is customary where standing timber is sold without the land, to provide in the contract that the timber shall be removed within a specified time. Where such clause is inserted the time usually begins to run from the execution of the conveyance, although sometimes a different time is agreed upon, such as the time of the commencing of the

cutting. The general rule is that where the contract requires the timber to be removed within a given time the sale is only of so much timber as is removed within that time, and confers no authority to remove after the expiration of the time specified. The majority of cases hold that the title to the timber not removed reverts to the owner, but some of the cases merely hold that the buyer has no right of entry. Each case depends upon the terms of the particular contract."

In the case of *King* v. *Merriman*, 38 Minn. 47, [35 N. W. 570], an action for damages for the conversion of a quantity of sawlogs, the court used this language: "Contracts relating to an interest in standing timber with an express limitation as to the time of removal are familiar to the American courts in the timber states. Sometimes these contracts are in the form of conveyances of timber; sometimes of a sale coupled with a license to enter; sometimes of a formal license to enter and cut, and again of a reservation of the timber by the grantor in the conveyance of the land. But whatever the form, the limitation as to the time of removal has been almost invariably held to be a limitation of the grant or reservation itself. The reasons are manifest. Any other construction would be against the expressed intentions of the parties. Moreover if the right of entry be not limited to the time fixed, it would be practically unlimited, which would amount to so serious an encumbrance upon the land as to materially interfere with the owner's right to use or dispose of it."

In *Utley* v. *S. N. Wilcox Lumber Co.*, 59 Mich. 263, [26 N. W. 488], the supreme court of Michigan says: "The legal effect of the contract was that Wilcox, the owner of the land, sold to Utley the pine timber thereon for $2,500, Utley to cut and remove the same therefrom during the winter of 1877 and 1878, or if it could not be done for lack of snow then he was to cut and remove the same during the winter of 1878 and complete the job by May 1, 1879. The title to the timber passed to Utley immediately upon the execution of the contract. The license to remove the timber continued until May 1, 1879. The express agreement of Utley was that he would commence at once on the job and finish by May 1, 1879. The intention is clearly expressed to limit the time in which he might cut and remove the sawlogs. From all the acts and contracts of the parties in connection therewith the intention clearly appears to limit the time in which the timber should

be cut and removed, and that the sale was confined to such timber as should be cut and removed within the specified time.''

In *Null* v. *Elliott*, 52 W. Va. 229, [43 S. E. 173], the owner of the land granted, bargained, and sold all the timber, tanbark, and ties on the premises. The contract provided that the grantee was to have two years from date to take off and remove said timber and not later, and to have all the privileges of going on said land with roadways, mill sites, etc. The time limit in the contract expired, and the grantor notified the grantee not to further trespass upon the land by cutting any more timber, or removing that already cut, or the temporary buildings erected by the grantee upon the land. The grantee filed his bill, setting out the hardships of the contract, the great loss he would sustain if he was prevented from reaping the benefits thereof, and asking the court to relieve him by extending the time for the execution of the contract. The court in deciding the case says: ''A contract for the sale of all the timber, tan-bark and ties on a certain tract of land, and providing that the purchaser is to have two years to take off and remove such timber, and not later, does not authorize the purchaser to sever any timber standing on the land after the two-year limit has expired. Such a provision as this in timber contracts is held to be a condition of the sale, and not a covenant to remove, and the purchaser only takes so much of the timber as he may cut and remove in the specified time; otherwise it remains the property of the land owner as part of the land. Such being the law the plaintiff could not ask a court of equity to extend the time limit, for it would be making a new and entirely different contract between the parties.''

The appellant further contends that the provision in the contract that the removal of the timber should be completed within five years from the time of its commencement, is a mere covenant on the part of the grantee such as is alluded to in the case from which we have just quoted, the breach of which entails no forfeiture; and cites the case of *Peterson* v. *Gibbs*, 147 Cal. 6, [109 Am. St. Rep. 107, 81 Pac. 121]. The facts of that case, however, were different from those here. The contract gave to the grantees ten years within which to remove the timber, followed by a provision that for every year thereafter that the timber was allowed to remain on the land

the grantees should pay the sum of two hundred dollars. The court held that in such a case the removal within ten years was not a condition attached to the grant of the timber, but it also laid down the rule that "the question in each case is as to what is the contract between the parties."

The next contention of the appellant is that if the right of forfeiture existed before July 1, 1915, it was not self-executing, but upon the happening of the default it was necessary for the plaintiffs by some overt act to assert their right of forfeiture, and that if they failed to do so, or thereafter recognized the defendant's interest as continuing, no forfeiture accrued.

We think that this contention is sufficiently answered by the finding of the trial court that the plaintiffs at all times were in possession of the land after the withdrawal by the defendant's assignor, and by what we have already said as to the five-year limitation upon the right to cut timber upon the plaintiff's land.

The adverse findings of the trial court also dispose of the further contention that the plaintiffs expressly, impliedly, and by laches waived any right of forfeiture that existed in their favor, and were estopped by their conduct to claim any termination of defendant's rights prior to July 1, 1915.

The further claim is made by the appellant that any limitation of time for the cutting of timber was superseded by express agreement; but the evidence upon which this contention is based, viz., an expression in a letter written by one of the plaintiffs to the defendant, was not considered by the trial court as susceptible of receiving this construction, and we think the trial court was entirely correct in its conclusion.

It is finally urged in support of the appeal that the court's finding "That prior to the service of said notice (of February 5, 1914) plaintiffs did no other act to indicate a claim of forfeiture," entitled defendant to judgment; but we think it sufficiently apparent from what we have already stated that under the facts of this case it was not necessary for the plaintiffs to do more than they did to permit them to exclude defendant from their lands from and after the month of August, 1912; and the only occasion or necessity for serving the defendant with the written notice of February 5, 1914, alluded to in the finding of the trial court in question, arose from the

asserted intention of the defendant at that time to resume lumbering operations upon the plaintiffs' land.

For the foregoing reasons the judgment is affirmed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 24, 1917.