[Civ. No. 9007.   Third Dist.   Jan. 25, 1957.]

JAMES SHERIDAN WOOD, as Administrator, etc., Appellant, v. ROBERT B. DENNEY, JR., et al., Respondents.

William R. Walsh and Robert F. Appel for Appellant.

Huber & Goodwin, G. Edward Goodwin and Norman C. Cissna for Respondents.

WARNE, J. pro tem.*—James Wood, as administrator of the estate of Sid Wood, brought this action to have a contract for the sale of timber cancelled and set aside; to quiet title to certain land in Del Norte County and for damages for the withholding of the possession of the land.

Judgment was in favor of the plaintiff for the sum of $4,-

*Assigned by Chairman of Judicial Council.

098.75 plus interest in the amount of $840.67, and also ordered that a final determination of the amount of the actual price of the timber, according to the formula provided in the contract, abide the cutting of timber. It also decreed that the contract was valid and enforceable.

In 1948 Sid Wood and his wife, Valborg K. Wood, entered into a written agreement for the sale of timber on lands which they owned in Del Norte County to Ralph E. Yoder and Joe M. Reinarz, copartners doing business under the name of Del Norte Milling Company.

On June 12, 1950, Del Norte Milling Company, for a valuable consideration, assigned the contract to the defendants.

The contract provided that the timber was to be sold on a stumpage basis at the price of $3.25 per thousand board feet for all merchantable timber on said lands with the provision that if the lumber market conditions materially changed, then at 60-day periods the price was to be adjusted on a percentage basis of increase or decrease over or under present market conditions. The contract called for payments of $2,500 at six-month intervals, with minimum payments of $5,000 per year until the logging operations started, when payments were to be made monthly on a stumpage basis, but in no event were the annual payments to be less than $5,000. No logging was ever done on the property. The annual payments of $5,000 were made to September 10, 1951, at which time the Woods had received $20,000. Defendants then stopped making further payments, because they were afraid that the payments made exceeded the value of the merchantable timber on the land. Under date of September 11, 1953, by letter, appellant gave the 30 day notice of default required by the contract. He contended that the defendants were under an obligation to make annual payments until the timber was removed. Defendants answered this letter, denied that they were in default, and offered to pay $4,098.75 which would be the maximum price due on the contract based on a certified cruise which reflected there was 7,415,000 board feet of timber on the property. Appellant rejected the offer and in November of 1953 commenced this action. At the commencement of the trial defendants tendered to appellant a certified check payable to him in the sum of $4,098.75. The offer was again rejected.

Appellant contends that the contract required defendants to continue making the minimum $5,000 annual payments until the timber was removed and that all the payments that

were made prior thereto were payments for rent on the premises, under the minimum requirement of the contract. The agreement is entitled "Agreement to Purchase and Sell Timber." The agreement provides as follows:

"And whereas the Second Parties are desirous of purchasing all the Merchantable timber on said lands, and parties of the First Part are desirous of selling all the merchantable timber on the above described 429.74 Acres, therefore it is mutually agreed as follows:

"First Parties agree to sell, and Second Parties agree to buy said merchantable timber on said lands on the following terms and conditions, to-wit:

"Said timber is being sold on a stumpage basis at price of $3.25 per M. B. M. Ft. for all merchantable timber thereon. . . . "

All of the agreement relates to the sale and purchase of timber. There is nothing in the agreement that in the least justifies an inference that anything was to be paid as rental for the use of the lands. The contract was obviously one for the sale and purchase of timber and nothing more.

While the defendants admit that they did not make any payments after September of 1951 because of the uncertainty of the amount remaining due, that did not excuse their default. The timber cruise disclosed that they still owed $4,098.75. However, the court properly granted the defendants relief from their default under the provisions of section 3275 of the Civil Code. The Woods had received $20,000, which is a substantial part of the entire amount that they were entitled to under the contract. It cannot be said as a matter of law that the breach was willful in view of the uncertainty as to what remained due the sellers, nor has any gross negligence on the part of defendants been shown. Following the service on them of the notice of default, defendants offered to pay what was still due and owing as the price of the timber. This indicated their willingness to continue with the contract. They were able to make the payments. The contract expressly stated that the contract may continue over a number of years, so time was not the essence or an important factor to either party. To have decreed a forfeiture of the contract would have resulted in an unjust enrichment of the appellant. Appellant was allowed interest on the payment in default and has sustained no loss as a result of the default. As stated in *Barkis* v. *Scott*, 34 Cal.2d 116, 122 [208 P.2d 367], "when

the default has not been serious and the vendee is willing and able to continue with his performance of the contract, the vendor suffers no damage by allowing the vendee to do so. In this situation, if there has been a substantial part performance . . . permitting the vendor to terminate the vendee's rights under the contract and keep the installments that have been made can result only in the harshest kind of forfeitures. Accordingly, relief will be granted whether or not time has been made of the essence.''

Appellant also contends that findings number 7 and number 8 are not supported by the evidence. Finding 7 reads: ''That while the timber may not be taken off 'for a number of years,' the payments shall not continue after an amount sufficient to reasonably cover the value of the timber has been paid,'' and finding 8 reads: ''That the agreement is for the sale of timber and is not a lease or rental agreement, the only payment to be made by purchaser being for the timber sold.'' What this court has said in construing the contract fully answers these contentions. Further, the findings are supported by the contract which is in evidence.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.