[Civ. No. 22668. First Dist., Div. Three. July 27, 1966.]

VERNER BROOMFIELD HENDREN et al., Plaintiffs and Respondents, v. ROBERT F. YONASH et al., Defendants and Appellants.

Dermott, Maxwell & Hood and Richard B. Maxwell for Defendants and Appellants.

Spridgen, Moskowitz, Barrett & Achor and Edwin C. Anderson, Jr., for Plaintiffs and Respondents.

DEVINE, J. — Respondents, plaintiffs, were awarded a decree quieting title to real property and timber growing thereon, injunction against removal of timber by appellants, and double damages for prior removal of timber. Appellants had cross-complained for damages and declaratory relief which, they had prayed, would justify their removal of timber from lands of respondents and allow further cutting and removal.

## Facts

A contract was made in 1951 between respondents and John H. Markham & Son Lumber Company, a corporation, whereby for the sum of $10,000 the respondents sold all standing or down merchantable redwood and fir, and the logger was given the right to fell and remove timber from respondents' land. Those parts of the contract which have to do with termination and extension are: "(2) TERM OF RIGHTS OF ACCESS: All of Logger's rights to said timber shall revert, and all its rights of entry in or upon said property, for purpose of logging said timber or otherwise, shall cease and terminate, upon the midnight next following 11:59 o'clock p.m. of the tenth (10th) anniversary of the effective date of this instrument as hereinafter defined: UNLESS, however, Logger shall exercise its option to extend its rights and rights of entry, as herein provided. (3) EXTENSION OF RIGHTS OF ENTRY: Said option in Logger is granted upon the express condition that it be exercised as follows: on or after the sixtieth (60th) day next preceding said tenth (10th) anniversary of the effective date of this instrument, and no later than on the thirtieth (30th) day next preceding said tenth (10th) anniversary, Logger may give written notice to Owners of its intention to extend its rights to said timber and its rights of entry upon said premises. [Here follow detailed requirements for the notice.] Upon condition that it be so exercised, and that it lapse and become a nullity if not so exercised, Owners grant to Logger the option of extending the life of its rights to said timber and its rights of entry upon said premises." In case of extension under the option logger agrees to pay owners $450 for each year, or part of year, that it shall have the right to operate. This requirement ceases on delivery of a quitclaim deed from logger to owners. Logger agrees to pay owners $100 for taxes on July 1, 1952, and on the first day of July thereafter until the agreement is terminated. It is conceded that the 10th anniversary was June 11, 1961, and that the written notice of intention to extend rights was not given.

The Markham Company assigned its rights. An assignee known as Firco, Inc. removed some of the timber. On April 13, 1961, a little less than two months before the expiration date, Firco assigned the logger's rights to appellant Silver & Yonash, a partnership, for $35,000. The assignment was announced orally and rather informally to the senior Mr. Hendren. The record does not disclose his exact age at the time, but it appears that he was elderly, had recently been hospitalized, and was sick on the day that the matter was told to him. The partnership commenced logging operations in late April, 1961. For some weeks, there were agreeable relations. The head of the Hendren family (father of two other plaintiffs) provided keys for access roads to the loggers; located property lines for them; helped them obtain employees; expressed concern that the logging be completed by fall so that the land could be reseeded and returned to a grazing operation. His son knew of the operation, too. Meanwhile, 30 days before June 11, the time for exercising the option expired. Hendren did not have in mind the date for taking up the option; neither did Yonash, member of the partnership. The senior Hendren sent a message to the chief logger, Mr. Raddatz, about the $100 for taxes. He got no reply. So he conferred with his son and read the contract, consulted lawyers and then, on August 9, 1961, sent a notice to appellants declaring that all rights under the contract had terminated and demanding that all logging operations cease. Immediately, the loggers tendered $100 for taxes and $450 as annual fee, but the tender was refused.

In the lawsuit plaintiffs prevailed in all of their contentions, as described under separate headings below.

### The Issue of Forfeiture

#### a. Pleading

Appellants contend that they had properly made the issue before the trial court, that the actions of respondents would work a forfeiture, that the court should have relieved them from forfeiture, and that although this issue was before the judge he failed to consider it. The findings and conclusions of law do not mention forfeiture. In a memorandum opinion the judge says that appellants do not plead that they should be relieved of forfeiting the option. Appellants say that they did plead it in their cross-complaint. But the trial judge is correct. He points out that all that is pleaded on this subject is that appellants will forfeit the *money*, which, of course, was not paid by them to respondents but to their own assignor.

They do mention that they would receive no timber in return for the forfeited money. This falls far short of the requirement of pleading relief from forfeiture. ▮ Civil Code section 3275 presupposes that the party seeking relief is in default. Facts justifying the application of the section must be pleaded. (*Barkis* v. *Scott,* 34 Cal.2d 116, 120 [208 P.2d 367].)

b. *Forfeiture*

▮ Regardless of the state of the pleading, no forfeiture exists in this case. The contract clearly provides that title to timber that has not been removed from the land shall revert to the owners at the end of 10 years, unless the carefully described option be exercised. It provides that the right of entry shall terminate. It states that the option shall become a nullity if not exercised according to its terms. A more explicit statement of the intention of the parties could hardly be made. ▮ Where there is a contract for the sale of standing trees to be removed within a specified time, title ordinarily passes to the vendee to only those trees which he cuts and removes within the designated period. Title to the remaining trees is in the vendor. (*Whittaker* v. *Thompson,* 53 Cal.2d 192, 194 [1 Cal.Rptr. 7, 347 P.2d 7]; see also *Call* v. *Jenner Lumber Co.,* 33 Cal.App. 310 [165 P. 23].) ▮ The fact that the instrument employs words of present grant does not necessarily establish title in the vendee beyond the period allowable for removal. (*Mallett* v. *Doherty,* 180 Cal. 225, 230 [180 P. 531, 15 A.L.R. 19].) The question in each case is as to what is the contract between the parties. (*Mallett* v. *Doherty, supra,* pp. 228-229.) ▮ In the case before us, the intention that title shall revert is clearly expressed. Loss of rights by failure to exercise an option does not work a forfeiture against the optionee. *Drewry* v. *Welch,* 236 Cal.App.2d 159, 167 [46 Cal.Rptr. 65].) In the *Drewry* case, it was agreed that title should not pass until the timber was paid for. But the reversion of title on an expiration date has the same effect. There simply is nothing left for the optionee to act upon. Cases cited by appellants are not helpful to them. As observed in *Drewry* v. *Welch* (p. 165), they were distinguished, if not overruled, by *Mallett* v. *Doherty.* Besides, in none of the cases cited by appellants, *Peterson* v. *Gibbs,* 147 Cal. 1 [81 P. 121, 109 Am.St.Rep. 107]; *Gibbs* v. *Peterson,* 163 Cal. 758 [127 P. 62]; *Ciapusci* v. *Clark,* 12 Cal.App. 44 [106 P. 436]; *Anderson* v. *Palladine,* 39 Cal.App. 256 [178 P. 553], was there mention of reversion of title on failure to exercise the option, nor a

declaration that the option would become a nullity if not exercised according to its terms, both of which declarations appear in the contract before us.

Appellants also cite cases not involving options, in which relief from forfeiture has been granted: *Crofoot* v. *Weger,* 109 Cal.App.2d 839 [241 P.2d 1017]; *Wood* v. *Denney,* 148 Cal. App.2d 14 [305 P.2d 935]; *Ascherman* v. *McKee,* 143 Cal.App. 2d 277 [299 P.2d 367]. In all of these cases there had been some violation of the terms of the contract, despite which relief from forfeiture was granted. But in none of them had the contract expired. To hold that respondents must revive the option and that they must surrender title to the timber, although by the terms of the contract it has reverted to them, would be to work a forfeiture against respondents. It would take property which belongs to them and give it to others.

### *Unjust Enrichment*

▉ Appellants argue that respondents are unjustly enriched. Throughout their briefs, they stress the $35,000 which they paid. But this was not paid to respondents. They received $10,000 for timber which, even after the cutting by Firco, commanded a price of $35,000. The price of redwood and fir in Sonoma County had increased enormously. Appellants got the timber which they removed before June 11, 1961. They could have had more had they exercised the option. Respondents would not then have been heard to say that appellants had received timber worth much more than the price paid to respondents and that appellants therefore were unjustly enriched.

### *Exercise of Option*

▉ Appellants contend that actually there was an exercise of the option because the notice provision was substantially complied with. It would have been an idle act, they say, to have given the notice by mail, because their presence on the property in logging operations showed clearly their intention to use the option. But this is not so, at least as a matter of law against the finding of the trial judge. Up to June 11, 1961, appellants could operate without use of the option and without giving notice. Mr. Hendren testified, when asked by appellants' counsel, that appellants could have removed all the timber very easily before June 11.

▉ Where an option rests with one of the parties and the option is not exercised, the agreement lacks mutuality of obligation and it cannot be enforced against the other. (*Prather* v. *Vasquez,* 162 Cal.App.2d 198, 203 [327 P.2d 963].) If appel-

lants had given the required notice, they would have undertaken certain obligations by the express terms of the original contract. By failing to give the notice, they avoided the express agreement to pay the $450 or the $100 in taxes. Until the written notice of August 9 was given, they did not offer to pay.

If appellants' presence on the land were regarded as the equivalent of notice, they would have a five-year extension. They could operate swiftly or slowly. They could assign. They could delay the quitclaim deed.

Of course, it may be that it would not have been to their advantage to do anything but complete all logging, to pay as soon as possible, and to execute the quitclaim expeditiously. But appellants' failure to pay the $100 when it was demanded, as well as their failure (as Yonash testified) to apprise themselves of the terms of the contract, may well have been considered by the trial judge as showing that appellants were not quick to assume the obligations which exercise of the option would impose.

Hendren testified that he did not have the contract at hand and did not give notice of the expiry (although he had no duty to do so). Much is made by appellants of the fact that Hendren had it at home, though he testified at deposition that it was at his bank. But the effect, if any, of such discrepancy is for the trial judge's decision.

The fact that the words "time is of the essence" are not in the contract is not important. Time provisions are carefully spelled out. Generally, time is of the essence in an option without specification in the contract. (*Rosenaur* v. *Pacelli*, 174 Cal.App.2d 673, 677 [345 P.2d 102] ; *Auslen* v. *Johnson*, 118 Cal.App.2d 319, 322 [257 P.2d 664].)

Also, although the word "may" is used at certain points, the word is used in relation to the choice allowed to appellants. It is of the essence of option that it *may*, but need not, be exercised. (*Auslen* v. *Johnson, supra.*) The word "must" is used in the contract where the method of accepting the option is described.

It is argued that the renewal provision be regarded as a covenant and not a condition. But the contract refers to it as "an express condition."

### Estoppel and Waiver

Appellants argue on appeal that estoppel and waiver apply, and, of course, they must show that these exist as a matter of law.

A waiver may occur (1) by an intentional relinquishment of a known right or (2) as the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that the right has been relinquished. (*Crest Catering Co.* v. *Superior Court,* 62 Cal.2d 274, 278 [42 Cal.Rptr. 110, 398 P.2d 150]; *Rheem Mfg. Co.* v *United States,* 57 Cal.2d 621, 626 [21 Cal.Rptr. 802, 371 P.2d 578].) The burden is on the party asserting the waiver to prove it by evidence that does not leave the matter uncertain. (*Church* v. *Public Utilities Com.,* 51 Cal.2d 399 [333 P.2d 321].) There has been no proof of an intention on the part of respondents to waive, and their acts were not such as would necessarily induce belief of relinquishment of any right. Until June 11, 1961, appellants had a perfect right to log the land. The evidence is that neither party thought of the expiration date of the option. There was no duty on respondents to recall that date to mind and to notify appellants of it. The contract places the duty on appellants.

It is true, as appellants say, that the amount of evidence to establish waiver is not great in cases involving forfeiture (*Loughan* v. *Harger-Haldeman,* 184 Cal.App.2d 495 [7 Cal.Rptr. 581].) But this is not a forfeiture case.

As to equitable estoppel, there are four essential elements (18 Cal.Jur.2d, § 5, pp. 406, 407), of which three are clearly missing. The party to be estopped must have actual knowledge of the facts as to which his conduct or declaration related. Respondents, father and son, testified they were not aware of the expiry date. The party must intend that his conduct shall be acted upon. This, of course, was not shown. The other party must rely on the conduct. Appellants had paid no attention to the expiration date; they proceeded on their own initiative. The fourth element (ignorance of the true facts by appellants) probably existed, but by itself is without effect.

## Damages

In their opening brief, appellants contend that the double damages, as awarded respondents under Civil Code section 3346, would have been allowable only if there had been a mistake by the logger as to the ownership of the *land.* They concede in their closing brief that the intervening decision of *Drewry* v. *Welch, supra,* 236 Cal.App 2d 159, has resolved the point against them. They now make the lesser point relating to the amount of timber, arguing that ''the value of the timber

removed was based upon the amount of timber hauled to the mill during the period from June 11th to the close of operations on or about August 12th [and that] there is no evidence to indicate that this timber was all completely cut after June 11, 1961." But title to all of the timber reverted to respondents on June 11. The word "timber" is used in the contract to denote standing or down timber.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 14, 1966.