Filed 1/22/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SOUTHERN CALIFORNIA SCHOOL OF THEOLOGY, | B295488 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KC068691) |
| v. | |
| CLAREMONT GRADUATE UNIVERSITY et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dan Thomas Oki, Judge. Reversed and remanded with directions.

Loeb & Loeb, Paul Rohrer, W. Allan Edmiston; Greines, Martin, Stein & Richland, Robin Meadow and David E. Hackett for Defendants and Appellants.

Jackson Tidus, Charles M. Clark and Kathryn M. Casey for Plaintiff and Respondent.

_____

Claremont Graduate University and Claremont University Consortium (collectively Claremont)[1] appeal from a judgment entered in favor of Southern California School of Theology[2] (SCST) after a bench trial.

The parties' dispute stems from terms included in a 1957 grant deed (and incorporated by reference into various other documents) transferring the land on which SCST's campus sits from Claremont College (now Claremont Graduate University, which is Claremont University Consortium's predecessor-in-interest) to SCST. The deed contained two conditions subsequent (recited in full below), one regarding permissible uses of the property (Educational Use Clause) and one regarding conditions that would require SCST to offer the property for sale to Claremont on agreed terms (First Offer Clause), enforceable by a power of termination and right of reentry.

---

[1] Claremont University Consortium (currently known as The Claremont Colleges, Inc.) oversees centralized planning, services, and programs for the Claremont Colleges—Pomona College, Scripps College, Claremont McKenna College, Harvey Mudd College, Pitzer College, Keck Graduate Institute, and Claremont Graduate University. Claremont Graduate University was established in 1925 as Claremont College, but is now its own corporate entity separate from the Claremont University Consortium.

[2] SCST does business as the Claremont School of Theology. SCST is not one of the Claremont Colleges, but is an "affiliate" of the Claremont Colleges. According to the Claremont University Consortium's policy and procedure manual, affiliate "status . . . has recognized a special collaborative educational relationship between the affiliate and at least one of the member Claremont Colleges . . . [and a] mutual benefit to both the affiliate and members of The Claremont Colleges."

In its judgment on SCST's first amended complaint and Claremont's second amended cross-complaint, the trial court concluded that both the Educational Use Clause and the First Offer Clause had expired on January 1, 1988 by operation of the Marketable Record Title Act (MRTA) (Civ. Code, § 880.020 et seq.). The trial court nevertheless concluded that the Educational Use Clause and the First Offer Clause were equitable servitudes, enforceable by injunction under MRTA. The trial court also concluded, however, that enforcing the First Offer Clause as drafted would be inequitable because it would effect a forfeiture on SCST "of as much as $36 million, being the difference between the purchase price calculation [in 1957] and the current fair market value of the property." On that basis, the trial court chose to enforce the Educational Use Clause as written, but chose "to interpret the [First Offer Clause] as a 'First Right of Refusal[,]' " and then created the terms of the First Right of Refusal by injunction.

Claremont challenges the trial court's use of the forfeiture doctrine to decline to enforce the deed's First Offer Clause and to create a first right of refusal in its stead. We agree with Claremont that the forfeiture doctrine has no application under these circumstances. We will reverse the trial court's judgment.

## BACKGROUND

SCST withdrew from the University of Southern California in 1956. In 1957, it affiliated with the Claremont Colleges and purchased the land it now sits on (adjacent on two sides to

3

Claremont Graduate University and near the remaining Claremont Colleges) for approximately $107,500.[3]

As part of the transaction transferring land and affiliating SCST and the Claremont Colleges, SCST and Claremont executed, among other documents, a grant deed and a written agreement (the 1957 Agreement).[4]  The deed contained two conditions subsequent:  "1.  That no industrial or commercial activity, or any activity or condition contrary to any law or ordinance, or any activity or condition not usual and appropriate for an educational institution of collegiate grade, shall be conducted or suffered to be conducted or to exist on the real property granted"—the Educational Use Clause; and "2.  That if [SCST] . . . desire[s] to sell or transfer the said real property or any portion thereof, or if [SCST] does not within three years from the date of this Deed establish upon the said real property its headquarters and reasonably develop the said real property as its principal establishment and headquarters, or if [SCST] should cease to exist, or if [SCST] should cease to use the said real property as its principal place of carrying on its activities, <u>then</u>

---

[3] The trial court's statement of decision contains the following note:  "While the court has not been presented with evidence of the actual purchase price in 1957, the parties do not appear to dispute that this was the price."

[4] In 2001, the parties entered into an agreement to "amend and reaffirm" the 1957 Agreement.  The 2001 agreement specifically referenced the First Offer and Educational Use Clauses and restated terms of the 1957 Agreement.  In 2006, Claremont and SCST were both parties (among several other entities) to an agreement that acknowledged the 1957 Agreement and that it had been "amended and reaffirmed" by the 2001 agreement.

4

the said real property shall be offered for sale to [Claremont] upon the terms and conditions provided in [the 1957 Agreement] made by [Claremont] and [SCST] upon the same date as the date of this deed"—the First Offer Clause.  The deed made the conditions subsequent enforceable by a power of termination and right of reentry clause:  "IT IS PROVIDED THAT if [SCST] . . . breach[es] or suffer[s] to be breached any of the foregoing conditions in any material particular then this Deed shall be null and void, and any and all right, title, estate or interest of [SCST] shall thereupon cease and terminate forthwith and shall revert to [Claremont], and [Claremont] shall have the right to re-enter the said real property and take possession thereof and eject [SCST] therefrom."

The 1957 Agreement incorporated "the terms and conditions of the said Deed" and set forth in detail the "terms and conditions" of the First Offer Clause and, among other provisions, a number of obligations by each party giving contour to the Educational Use Clause.

In 2015, SCST approached the Claremont University Consortium to determine whether it or any of the Claremont Colleges had an interest in purchasing or leasing any part of the SCST campus or otherwise helping SCST to financially leverage the property through "partnership opportunities for new development" or by "[c]o-locating services or functions." Claremont University Consortium and SCST negotiated, but never reached any agreement regarding SCST's campus property. SCST marketed the property for sale, and ultimately received offers.

SCST filed suit against Claremont in August 2016 asking the trial court to quiet title against Claremont and to declare that

5

the Educational Use Clause and First Offer Clause had expired pursuant to the MRTA.  Claremont cross-complained, alleging that SCST had breached the deed, the 1957 Agreement, and other agreements by marketing the property without first offering it for sale to Claremont on the terms of the First Offer Clause and seeking specific performance of the First Offer Clause and a declaration that the terms of the parties' agreements remain valid in spite of the MRTA.[5]

The matter was tried to the court in September 2018, and on December 18, 2018, the trial court issued a lengthy written statement of decision.  The trial court concluded that the Educational Use and First Offer Clauses had expired by operation of the MRTA on January 1, 1988.  The provisions in the parties' various agreements were not enforceable under a breach of contract theory, the trial court said, because "if a contractual

---

[5] The operative pleadings at trial were SCST's first amended complaint, alleging causes of action to quiet title for properties in both the deed and a 1972 deed (for a different parcel of land), a declaration that the Educational Use Clause and First Offer Clause had expired by operation of the MRTA, rescission of the parties' 2001 agreement, and a declaration that clauses of the 2001 agreement reaffirming the deed's power of termination would constitute a forfeiture; and Claremont's second amended cross-complaint, alleging causes of action for breach and enforcement of the deed, breach and enforcement of the 1957 Agreement, breach and enforcement of the parties' 2001 agreement, breach and enforcement of the parties' 2006 agreement, reformation of the deed, the 1957 Agreement and/or the 2001 agreement, promissory or equitable estoppel, breach and enforcement of the 1972 deed, specific performance of the deed, the 1957 Agreement, the 1972 deed, and the 2001 and 2006 agreements, restitution, and declaratory relief.

6

right under such circumstances could still be enforced, it would defeat the intended purpose of the MRTA, which is to eliminate unreasonable restraints on the alienation and marketability of real property caused by an interest therein created at a remote time."

The trial court noted, however, that under the MRTA, "an expired power of termination may still be enforced by injunctive relief where it also constitutes an equitable servitude." The trial court concluded that the Educational Use Clause and First Offer Clause "constitute equitable servitudes enforceable by injunction." Nevertheless, the trial court concluded that "strict enforcement of the [First Offer Clause], and its method of calculating the price to repurchase the property, would result in [SCST] suffering a forfeiture of as much as $36 million, being the difference between the purchase price calculation under the 1957 Agreement and the current fair market value of the property." Based on its conclusion that enforcement of the First Offer Clause would result in a forfeiture by SCST, the trial court "therefore [chose] to interpret the [First Offer Clause] as a 'First Right of Refusal.'" The trial court then set forth extensive and detailed terms by which Claremont could exercise the first right of refusal the trial court created.

The trial court entered judgment on January 23, 2019, setting forth in judgment form the same findings and conclusions. Claremont filed a timely notice of appeal.

## DISCUSSION

SCST argues that the MRTA controls and allowed the trial court to invoke the forfeiture doctrine to rewrite the terms of the parties' First Offer Clause. Claremont disagrees. Even if the MRTA applies, Claremont contends, the First Offer Clause is an

7

equitable servitude that must be enforced as written.[6]  We need not decide whether the MRTA applies to the parties' dispute because even if it does apply, the First Offer Clause is an equitable servitude that the MRTA does not extinguish.

### A. Equitable Servitude

Claremont does not challenge the trial court's conclusion that the Educational Use Clause and First Offer Clauses are equitable servitudes enforceable by injunction pursuant to the MRTA.  (Civ. Code, § 885.060, subd. (c).)  SCST characterizes the trial court's conclusions memorialized in the statement of decision and judgment as a finding that the First Offer Clause was *not* an enforceable equitable servitude.  According to SCST, the trial court declined to find that the First Offer Clause was an enforceable servitude, and instead used equitable powers to create a first right of refusal.  SCST argues that the trial court derived this equitable power from Civil Code section 885.060, subdivision (c), which allows the trial court to enforce equitable servitudes.

SCST's assertion is factually incorrect.  The trial court *expressly* concluded that the First Offer Clause was an enforceable equitable servitude:  "The [Educational Use Clause] and the [First Offer Clause] in the 1957 Agreement and

---

[6] Claremont contends alternatively that the MRTA does not render its other agreements with SCST (and their similar provisions or reaffirmations of the deed and the 1957 Agreement) unenforceable because they are independently enforceable contracts.  Because we conclude that the trial court's application of the forfeiture doctrine to interpret the First Offer Clause as a first right of refusal was error, we do not reach Claremont's remaining contentions.

8

subsequent agreements of the parties are equitable servitudes enforceable by injunction."

Moreover, the text of Civil Code section 885.060, subdivision (c) does not grant the trial court the kind of equitable authority SCST urges. By its terms, section 885.060, subdivision (c) limits the enforcement of an equitable servitude to the terms the parties negotiated and renders it unenforceable by a power of termination; it does no more and no less. The statute explains that a deed restriction "for which a power of termination has expired under [MRTA]" is not extinguished by operation of MRTA "if the restriction is also an equitable servitude alternatively enforceable by injunction. Such an equitable servitude shall remain enforceable by injunction and any other available remedies, but *shall not be enforceable by a power of termination*." (Civ. Code, § 885.060, subd. (c), italics added.)

The doctrine of equitable servitudes makes enforceable at equity a covenant appurtenant to other benefited property that might be otherwise unenforceable. (*Marra v. Aetna Const. Co.* (1940) 15 Cal.2d 375, 378-379.) "A covenant running with the land is created by language in a deed or other document showing an agreement to do or refrain from doing something with respect to use of the land. [Citation.] An equitable servitude may be created when a covenant does not run with the land but equity requires that it be enforced." (*Committee to Save Beverly Highlands Homes Ass'n v. Beverly Highlands Homes Ass'n* (2001) 92 Cal.App.4th 1247, 1269 (*Beverly Highlands*); see *Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 354-355.) Equitable servitudes are enforceable "although they benefit or restrict only a single parcel of land." (*Marra*, at p. 378.)

The Educational Use Clause and the First Offer Clause both constitute "language in a deed . . . showing an agreement to do or refrain from doing something with respect to use of the land," and are equitable servitudes. (*Beverly Highlands*, *supra*, 92 Cal.App.4th at p. 1269; *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 379.)

## B. Changed Conditions and Forfeiture

The trial court "interpret[ed] the [First Offer Clause] as a First Right of Refusal in the event [SCST] chooses to sell or transfer all or a portion" of its campus property. In its statement of decision, the trial court explained that it "finds that the Educational Use [Clause] and [First Offer Clause] constitute equitable servitudes enforceable by injunction. However," the trial court concluded, "the calculation . . . for the repurchase of [SCST's] property by [Claremont] constitutes an unreasonable forfeiture and is unenforceable." The trial court concluded that "strict enforcement of the [First Offer Clause], and its method of calculating the price to repurchase the property, would result in [SCST] suffering a forfeiture of as much as $36 million, being the difference between the purchase price calculation under the 1957 Agreement and the current fair market value of the property."

Claremont contends that the trial court erred when it applied the forfeiture doctrine to rewrite the terms of the parties' agreement. SCST contends that the trial court—under the doctrine of changed conditions—acted within its discretion by replacing the First Offer Clause with the first right of refusal terms it set forth in the statement of decision and judgment.

Neither the statement of decision nor the judgment purports to have applied the doctrine of changed conditions to decline to enforce the First Offer Clause. To the contrary, the

statement of decision and judgment refer expressly to the forfeiture doctrine. To be clear, the trial court did *not* conclude that conditions had changed sufficient to decline to enforce the First Offer Clause; it *instead* concluded that enforcing the First Offer Clause as written *would effect a forfeiture*. Neither do the facts of this case support application of the doctrine of changed conditions.

Increases in property value alone do not constitute changed conditions sufficient to invalidate otherwise enforceable equitable servitudes: "The fact that unrestricted use of the property would be more profitable does not warrant failure to enforce the restriction if the original purpose of the covenant can still be realized." (*Robertson v. Nichols* (1949) 92 Cal.App.2d 201, 208.) If the inverse were true, it is difficult to imagine an equitable servitude on any property in the state that would long be enforceable. Neither the statement of decision nor the judgment mentions any other condition of the property that has changed that would permit the trial court to disregard the First Offer Clause.

The forfeiture doctrine, codified in Civil Code section 3275, provides that where the terms of an obligation effect a forfeiture, a party may, under certain circumstances, be relieved from failure to comply with the terms of the obligation.

The trial court concluded that the deed's First Offer Clause and the 1957 Agreement's terms establishing the repurchase price for Claremont set the repurchase price at "approximately $3.5-$4 million . . . . If, however, the [Educational Use Clause] and the [First Offer Clause] are no longer enforceable, [SCST] may be able to sell the real property to developers for any lawful purpose, including a commercial or residential development, for

11

its current market value of as much as $40 million." The trial court ultimately concluded that the difference between the $40 million potential market value of unencumbered property and the $3.5-$4 million that the property might be valued under the First Offer Clause's terms constituted a forfeiture.

The forfeiture doctrine does not apply where there is no forfeiture. (*Hendren v. Yonash* (1966) 243 Cal.App.2d 672, 677 (*Hendren*).) "The question in each [forfeiture] case is as to what is the contract between the parties." (*Ibid*.)

Contracts are, by their very nature, allocations of risk and responsibility as between the parties. (See *Kanovsky v. At Your Door Self Storage* (2019) 42 Cal.App.5th 594, 598-599.) Here, the parties allocated the risks and responsibilities regarding the inevitability of increased property value in 1957 in the deed and the 1957 Agreement. The parties agreed that Claremont's repurchase price under the First Offer Clause would be "computed as follows: *whichever of the following defined amounts be lower*, either (1) the fair market value of the land granted, and the improvements and fixtures thereon, as of the date when the notice of offer is given, or (2) the sum of the following amounts: the purchase price of the land granted in the sale from [Claremont] to [SCST][7] <u>plus</u> taxes and assessments paid by [SCST] thereon since the date of conveyance by [Claremont] to [SCST] <u>plus</u> the original cost of improvements and fixtures thereon but <u>less</u> a reasonable allowance for depreciation and obsolescence of such improvements and fixtures."[8] (Italics

---

[7] Again, approximately $107,500.

[8] SCST and Claremont agreed that if they were unable to agree on the price "or on any of the calculations relating thereto,

12

added.) Indeed, by the terms of the agreement, SCST was to bear the risk that the property *either increased in value or decreased*; the parties agreed that Claremont's first offer right was to be the *lower* of either the fair market value of the property or the calculation based on the price SCST paid for the land.

We conclude that enforcing the First Offer Clause as written would operate no forfeiture to either party; indeed, each party would receive that for which they bargained, and that to which they agreed. (See *Barkis v. Scott* (1949) 34 Cal.2d 116, 122-123.) Whether SCST stays at its location in Claremont or moves and triggers the First Offer Clause, it will have received what it bargained for. That more than six decades have passed and land has appreciated in value does not render the terms of the parties' agreement a forfeiture for either party. Rather, the trial court's "interpretation" of the First Offer Clause as a first right of refusal would materially alter the parties' allocation of their respective risks and contractual rights and responsibilities. Absent a forfeiture to be avoided, the forfeiture doctrine is inapplicable. (*Hendren*, *supra*, 243 Cal.App.2d at p. 677.)

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court. On remand, the trial court is directed to vacate its judgment and enter judgment enforcing as written the First Offer Clause and Educational Use Clause as equitable servitudes

---

then the question shall be submitted to arbitration, said arbitration to be conducted in accordance with, and to have the validity and effect provided by, the provisions on arbitrations of the Code of Civil Procedure of the State of California as then in force."

13

under Civil Code section 885.060, subdivision (c).  Appellants are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.